***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and oral arguments of the parties. With reference to the errors assigned by plaintiff, the Full Commission finds that plaintiff has not shown good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives. Accordingly, the Full Commission AFFIRMS with modifications, the Opinion and Award of Deputy Commissioner Hall and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
4. An employment relationship existed between the parties for all relevant time periods, and that Alcoa, Inc., is the defendant-employer and Mr. Jerry W. Lambert is the plaintiff-employee.
5. At all times relevant to this action, defendant-employer was self-insured for the purposes of meeting the requirements of the North Carolina Workers' Compensation Act, with the Specialty Risk Services, as its Third-Party Administrator.
6. Plaintiff's average weekly compensation rate is $754.00, the maximum compensation rate for 2007.
7. Defendants timely denied liability for plaintiff's claim of a hearing loss due to an injury by accident or occupational disease.
8. Plaintiff last worked for defendant-employer on July 30, 2007, at which time plaintiff was laid off for economic reasons.
9. Issues for hearing before the Deputy Commissioner were:
 a. Did Plaintiff sustain an occupational hearing loss as a result of his employment with Alcoa?
 b. If so, to what benefits is Plaintiff entitled as a result of the alleged occupational hearing loss? *Page 3 
 ***********
The following were marked and received into evidence as:
 EXHIBITS
1. Stipulated Exhibit 1 — IC forms, discovery, audiograms, hearing test records, personnel file, and hearing conservation program guide.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is 59 years old and started working at Alcoa's Badin, North Carolina facility on February 19, 1977. Alcoa laid plaintiff off on July 30, 2007 due to economic reasons. Prior to working for Alcoa, plaintiff held various jobs as a roofer, electrician, and carpenter. From 1969 to 1971, plaintiff was a combat engineer with the United States Marines and during his military career he worked with explosives and was subjected to very loud noises. He did not wear any hearing protection while in the military. Plaintiff has hunted in the past and still uses firearms on an occasional basis.
2. On July 26, 1976, plaintiff was given a pre-employment hearing test prior to his beginning work for Alcoa. The 1976 audiogram established that plaintiff had right ear hearing levels of 20, 20, 25, and 30 at the relevant 500, 1000, 2000, and 3000 frequencies, respectively. Plaintiff had hearing levels of 15, 20, 25, and 35 at the same frequencies in his left ear. Dr. Robert Quinn, a board certified otolaryngologist who testified for plaintiff, agreed that before he was hired by Alcoa, plaintiff had mild to moderate sensorineural hearing loss that was not related to his work at Alcoa. *Page 4 
3. When he began work at Alcoa, plaintiff was initially hired to work in the Pot room, where raw aluminum is produced. He worked in this job for two years. During plaintiff's subsequent employment with Alcoa, he held various employment positions, including DC Helper, Casting Operator, and Continuous Casting Operator.
4. Defendant stipulated at hearing that during his employment with Alcoa, plaintiff was exposed to levels of noise which were capable of producing occupational hearing loss.
5. Alcoa provided plaintiff hearing protection throughout his employment and plaintiff was properly trained on how to use the company provided hearing protection.
6. During his tenure at Alcoa, plaintiff received regular audiogram tests that showed continued high frequency hearing loss. Dr. Quinn tested plaintiff's hearing on October 11, 2005 and the audiogram revealed hearing levels of 35, 35, 50, and 50 in the right ear and 40, 35, 45, and 60 in the left ear at the relevant 500, 1000, 2000 and 3000 frequencies.
7. Plaintiff last had his hearing tested by Dr. Morgan at the Stanly Regional Medical Center on January 8, 2007. This audiogram revealed hearing levels of 30, 35, 50 and 60 in the right ear and 30, 35, 50, and 65 in the left ear at the relevant frequencies.
8. N.C. Gen. Stat. § 97-53(28)(d) provides that an employer is only liable "for the difference between the percent of occupational hearing loss . . . and the percentage of loss established by the pre-employment and audiometric examination." Accordingly, the Commission must determine the difference between plaintiff's pre-employment hearing loss reflected by his 1976 audiogram and his occupational hearing loss levels by examining his January 2007 audiogram, which is the last audiogram plaintiff had done and the one closest to the time he left the employ of Alcoa on July 30, 2007. *Page 5 
9. The method for calculating the level of hearing loss is set out in the N.C. Gen. Stat. § 97-53(28)(g) and states "[t]he percentage of hearing loss shall be calculated as the average, in the decibels, of the thresholds of hearing for frequencies of 500, 1000, 2000, and 3000 cycles per second." The results of the 1976 audiogram at these frequencies show levels of 15, 20, 25, and 35 for the left ear and 20, 20, 25, and 30 in the right ear. The results of the 2007 audiogram at these frequencies show levels of 30, 35, 50, and 65 in the left ear and 30, 35, 50, and 60 in the right ear. It appears from the 2007 audiogram that plaintiff's hearing is worse in the left ear.
10. N.C. Gen. Stat. § 97-53(28)(g) provides that the four frequency loss levels are to be added together and divided by four to determine the average decibel loss as set out below.
1976 audiogram: Right ear is 20 + 20 + 25 + 30 = 95 ÷ 4 = 23.75
 Left ear is 15 + 20 + 25 + 35 = 95 ÷ 4 = 23.75
2007 audiogram: Right ear is 30 + 35 + 50 + 60 = 175 ÷ 4 = 43.75
 Left ear is 30 + 35 + 50 + 65 = 180 ÷ 4 = 45.00

To determine the binaural percentage loss, the percentage of impairment in the better ear shall be multiplied by five. In 1976, both ears totaled the same. In 2007, plaintiff's right ear is the better ear.
1976 levels for right ear (right and left are same): 23.75 x 5 = 118.75
2007 levels for right ear (better ear): 43.75 x 5 = 218.75

Then, the resulting figure shall be added to the percentage of impairment in the poorer ear, and the sum divided by six as set out below. The final percentage shall represent the binaural hearing impairment. From 1976, the figure of 118.75 is added to the percentage of impairment for plaintiff's worse ear of 23.75 to equal 142.50, which when divided by 6 results in pre-employment binaural hearing impairment level of 23.75. From 2007, the figure of 218.75 is *Page 6 
added to the percentage of impairment for plaintiff's worse ear of 45.00 to equal 263.75, which when divided by 6 results in post-employment, or occupational, binaural hearing impairment level of 43.96.
1976 impairment level: 118.75 + 23.75 = 142.50 ÷ 6 = 23.75
2007 impairment level: 218.75 + 45.00 = 263.75 ÷ 6 = 43.96

11. With these binaural hearing impairment results, the analysis then returns to N.C. Gen. Stat. § 97-53(28)(d) to determine the difference between said results, which calculates to be 20.21 (43.96 — 23.75 = 20.21).
12. Since the analysis under N.C. Gen. Stat. § 97-53(28) results in an occupational binaural hearing impairment of 20.21, a level less that the statutory threshold level of 26.00, plaintiff did not sustain a compensable hearing loss as a result of his employment with defendant-employer.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Based upon the totality of the credible evidence of record, during the period of plaintiff's employment with defendant-employer, he was exposed to harmful noise levels exceeding 90 decibels. N.C. Gen. Stat. § 97-53(28)(a).
2. Plaintiff had high frequency hearing loss predating his employment with defendant-employer that was not the result of his employment with defendant-employer. N.C. Gen. Stat. § 97-53(28). *Page 7 
3. As plaintiff's binaural hearing impairment result of 20.21 is less that the statutory threshold level of 26.00, plaintiff did not sustain a compensable hearing loss as the result of his employment with defendant-employer. N.C. Gen. Stat. § 97-53(28).
 ***********
Based on the foregoing Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for hearing loss pursuant to the Worker's Compensation Act is hereby DENIED.
2. Each side shall bear its own costs.
This the 17th day of March, 2010.
 S/___________________
 STACI T. MEYER
 COMMISSIONER
CONCURRING:
S/___________________ DANNY L. McDONALD COMMISSIONER
S/___________________ PAMELA T. YOUNG CHAIR *Page 1